**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

I.E.E. INTERNATIONAL ELECTRONICS &
ENGINEERING, S.A. and IEE SENSING, INC.,

           Plaintiffs/Counter-Defendants,

v.

TK HOLDINGS INC. and TAKATA A.G.,

           Defendants/Counter-Plaintiffs.
_____/

Case No. 10-13487
Hon. Gerald E. Rosen

**OPINION AND ORDER SUSTAINING PLAINTIFFS'**
**OBJECTIONS TO MAGISTRATE JUDGE'S JUNE 24, 2013 ORDER**

           At a session of said Court, held in
           the U.S. Courthouse, Detroit, Michigan
           on           December 8, 2014

           PRESENT:  Honorable Gerald E. Rosen
                                 Chief Judge, United States District Court

        By order dated June 24, 2013, Magistrate Judge Michael Hluchaniuk granted Defendant Takata A.G.'s motion to compel Plaintiffs to cease their interference with Defendant's effort to obtain discovery from third party Zentrum Mikroelektronik Dresden A.G. ("ZMD"). Plaintiffs filed timely objections to this order, arguing (i) that there is no evidence that Plaintiffs interfered with any decision by ZMD to provide documents or produce a witness for a deposition, and (ii) that Defendant has failed to identify any authority establishing that the actions purportedly taken by Plaintiffs constituted "improper interference" with Defendant's discovery efforts, such that the relief awarded by the Magistrate Judge might be warranted. As discussed below, the Court agrees with

Plaintiffs on both scores, and therefore sustains their objections to the Magistrate Judge's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As observed in the Court's recent October 23, 2014 summary judgment ruling, (*see* 10/23/2014 Op. at 45), ZMD is a German corporation that supplied one component, an application specific integrated circuit ("ASIC"), used in Plaintiffs' "BodySense" occupant detection product. Defendant Takata A.G. has asserted that in ZMD's development of the BodySense ASIC, a ZMD employee, Dr. Stefan Getzlaff, made a sufficient contribution to Plaintiffs' BodySense product — and, more specifically, to the "clocked rectifier" used in this product — that he should have been included in the list of inventors disclosed in U.S. Patent No. 7,656,169 (the "'169 Patent"). In an effort to obtain support for this contention, Defendant sought discovery directly from Plaintiffs concerning the conception of the various elements of the '169 Patent, including the clocked rectifier. When, in Defendant's view, Plaintiffs were less than forthcoming with documents bearing on this issue — necessitating a motion to compel that, while granted, still left Defendant unpersuaded that Plaintiffs had made a full disclosure of all relevant materials — Defendant turned to ZMD for further information regarding the extent of its involvement in the development of BodySense. In particular, counsel for Defendant sent e-mail correspondence to ZMD representatives asking them to search through the company's records for documents shedding light on the development of the BodySense ASIC, and also seeking ZMD's permission to speak to Dr. Getzlaff on the telephone.

(*See* Dkt. No. 424-2, Schmid Decl., Ex. 1, Schmid 12/4/2012 e-mail; Ex. 5, Schmid 3/28/2013 e-mail.)

In response to Defendant's initial request for documents, ZMD sent an e-mail identifying a single document — a BodySense ASIC specification dated May 9, 2006 — as "contain[ing] the information requested by you," and enclosing a copy of this specification. (Dkt. No. 424-2, Schmid Decl., Ex. 2, Weidauer 1/31/2013 e-mail.)[1] A short time later, defense counsel requested a copy of an agreement entered into by Plaintiffs and ZMD for the development of the BodySense ASIC, and ZMD's outside counsel, Hendrik Kamp, responded as follows:

> We have contacted IEE in a request for approval of production of the agreement related to the development of the BodySense ASIC. IEE has denied your request for the following reasons.
>
> First, in [a prior e-mail, a ZMD representative] had asked you to ensure that the information provided to you would be made on a "Confidential - Attorneys' Eyes Only" basis only. So far, we have not received confirmation from you that such designation will be respected by you.
>
> Second, IEE invokes that there are formal discovery procedures available to [the Defendant companies] which protect the confidentiality of IEE's information and that your email requests do not follow the Hague Convention protocol applicable to the production of evidence in your case.
>
> That said, ZMDI will not provide a copy of the agreement referenced in your email . . . to you, unless you confer directly with IEE's counsel and provide us with IEE's written consent to the production of the agreement in question or follow the formal procedures for the disclosure of such piece of information.

---

[1]The parties dispute whether Plaintiffs had already provided this same document to Defendants earlier in the discovery period.

(Dkt. No. 424-2, Schmid Decl., Ex. 2, Kamp 3/6/2013 e-mail.)  Just two days after Mr. Kamp sent this e-mail denying Defendant's request, Plaintiffs themselves forwarded a copy of the agreement to Defendant.[2]

As for Defendant's efforts to speak to Dr. Getzlaff, defense counsel first raised this subject in a March 28, 2013 e-mail to a ZMD representative, stating that "[i]f it is agreeable to Mr. Getzlaff, I would like to speak with him concerning his involvement in the development of the IEE ASIC."  (Dkt. No. 424-2, Schmid Decl., Ex. 5, Schmid

---

[2]In the brief two-day period between Mr. Kamp's March 6, 2013 e-mail and Plaintiffs' production of the agreement, defense counsel and Mr. Kamp exchanged further e-mails regarding Defendant's request that ZMD provide a copy of this agreement.  First, defense counsel assured Mr. Kamp that any information provided by ZMD would be designated as confidential, and he reminded Mr. Kamp that "as you no doubt are aware, ZMD can produce the agreement between ZMD and IEE without IEE's consent and without resort to the formal Hague Convention rules."  (Dkt. No. 424-2, Schmid Decl., Ex. 2, Schmid 3/7/2013 e-mail.)  Defense counsel further stated that in the event that ZMD still declined to produce the agreement without Plaintiffs' consent, "we would appreciate it if you would provide to us a copy of the communication that ZMD sent to IEE asking for its consent and a copy of IEE's response where it refused to grant approval."  (*Id.*)  Mr. Kamp then responded:

> As stated in my previous email to you we feel that it is on you to seek IEE's consent to the production of said agreement by my client, but not on us.  However, I have been in contact with IEE's counsel and IEE has again denied their approval of production of a copy of the agreement mentioned in your email .  . . .  Therefore, I can only encourage you again to confer with IEE's counsel directly and seek their consent to such production.
>
> Further, as a matter of principle, my client does not disclose internal communications with its customers to third parties.  That said, I hope you will understand that ZMD also declines disclosure of its communications with IEE.
>
> Until we receive from you a written confirmation from IEE to the production of the agreement or any other information, ZMD will consider this matter closed.

(Dkt. No. 424-2, Schmid Decl., Ex. 2, Kamp 3/8/2013 email.)

4

3/28/2013 e-mail.) Defense counsel further expressed an interest in "speak[ing] with [Dr. Getzlaff] to see if he is willing to have his deposition taken in Germany." (*Id.*) After a follow-up e-mail in which defense counsel again inquired "if Mr. Getzlaff is available to speak with me sometime this week," (Dkt. No. 424-2, Schmid Decl., Ex. 5, Schmid 4/8/2013 e-mail), Mr. Kamp responded on ZMD's behalf, again insisting that Defendant secure Plaintiffs' written consent to this communication:

> So far, you have not provided us with a written consent from IEE regarding the disclosure of confidential information. Therefore, as stated in my previous email of March 8th 2013 to you my client considers this matter closed and does neither consent to a phone call between you and Mr. Getzlaff nor to any other communication regarding the business relationship between my client and IEE between you and any of my client's employees, directors, officers or other representatives.
>
> That said, I kindly advise you to refrain from contacting anyone in my client's organization in this matter. Please refer any further inquiries to the undersigned only.

(Dkt. No. 424-2, Schmid Decl., Ex. 5, Kamp 4/9/2013 e-mail.)

In the wake of these largely unsuccessful efforts to obtain information from ZMD and its employees regarding the development of the BodySense ASIC, Defendant brought an April 30, 2013 motion seeking an order that would (i) "prevent[] Plaintiffs, and any and all persons acting on their behalf, from interfering with document production requests and/or requests for a deposition made by [Defendant] to [ZMD]," (ii) require Plaintiffs to "provide written confirmation" to ZMD that it was permitted to produce the BodySense ASIC documents sought by Defendant and to make Dr. Getzlaff available for a deposition, and (iii) instruct Plaintiffs to "cease all efforts to convince, persuade or

5

suggest to [ZMD] that [it] should insist on discovery requests being made under the Hague Convention." (Defendant's 4/30/2013 Motion to Compel at 2-3.) Following a hearing on June 5, 2013, the Magistrate Judge issued a June 24, 2013 order granting Defendant's motion, and Plaintiffs have timely filed objections to this order.

## II.  ANALYSIS

### A.  The Standards Governing the Court's Review of the Magistrate Judge's Order

Under 28 U.S.C. § 636(b)(1)(A), a district court may reverse a magistrate judge's order only if it is "clearly erroneous or contrary to law." *See United States v. Curtis,* 237 F.3d 598, 603 (6th Cir. 2001). A magistrate judge's factual finding "will be deemed clearly erroneous only when, although there may be some evidence to support the finding, the reviewing court, upon review of the entire record, is left with the definite and firm conviction that a mistake has been committed." *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir. 2000).

### B.  There Is No Evidence That Plaintiffs Interfered with Any Discovery Requests Made by Defendant to ZMD.

In granting Defendant's underlying motion to compel, the Magistrate Judge determined that Plaintiffs failed to give any appropriate, meritorious reason for their unwillingness to consent to Defendant's requests that ZMD disclose certain information concerning its relationship with Plaintiffs and make its employee, Dr. Getzlaff, available for a telephone call with defense counsel or a deposition. (*See* 6/5/2013 Hearing Tr. at 71-72.) As their first objection to the Magistrate Judge's ruling, Plaintiffs contend that

the outcome of Defendant's efforts to obtain materials from ZMD and to contact Dr. Getzlaff was not affected or influenced in any way by Plaintiffs' unwillingness to give their consent. Rather, Plaintiffs assert that Defendant (i) was given all of the materials it sought from ZMD, (ii) abandoned its request to contact Dr. Getzlaff by phone, and (iii) never pursued a deposition of Dr. Getzlaff. Under these circumstances, Plaintiffs argue that there is no evidentiary basis for the Magistrate Judge's conclusion that they interfered with Defendant's discovery requests to ZMD. The Court agrees.

Turning first to Defendant's requests for documents from ZMD, the record discloses that Defendant made two such requests, both in the form of e-mails to ZMD representatives. As recounted above, Defendant first asked ZMD to search its records for documents relating to the development of the BodySense ASIC, and ZMD responded by providing a copy of a BodySense ASIC specification. Defendant then asked for a copy of the agreement between Plaintiffs and ZMD for the development of the BodySense ASIC. While ZMD denied this request, citing Plaintiffs' refusal to give their consent to this disclosure, Plaintiffs themselves provided this document a short time later. Because these were the only two document requests made by Defendant to ZMD, and because Defendant was given documents in response to each of these requests, the Court agrees with Plaintiffs that they cannot be said to have "interfered" with either of these two requests.[3]

---

[3] In its response to Plaintiffs' objections, Defendant takes issue with Plaintiffs' assertion that Defendant has received all of the documents it has sought from ZMD. Yet, rather than identifying any additional documents it requested but did not receive from ZMD, Defendant

Likewise, while the Magistrate Judge directed Plaintiffs not to interfere with or attempt to influence ZMD's decision whether to make Dr. Getzlaff available for a deposition, (*see* 6/24/2013 Order at 1-2), the Court again finds no evidence of Plaintiffs' "interference" with any such decision to date, such that this relief might be warranted. Defendant's initial e-mail on this topic requested ZMD's permission to "speak with [Dr. Getzlaff] concerning his involvement in the development of the IEE ASIC" and "to see if he is willing to have his deposition taken in Germany." (Dkt. No. 424-2, Schmid Decl., Ex. 5, Schmid 3/28/2013 e-mail.) In response, ZMD reiterated that Defendant would have to secure "written consent from IEE regarding the disclosure of confidential information" before it would agree to "a phone call between you and Mr. Getzlaff." (*Id.,* Kamp 4/9/2013 e-mail.) At the June 5, 2013 hearing on Defendant's underlying motion to compel, however, defense counsel advised the Magistrate Judge that Defendant was no longer seeking a telephone conversation with Dr. Getzlaff, but instead wished only to take his deposition. (6/5/2013 Hearing Tr. at 70.)

---

points to language in the Magistrate Judge's June 24, 2013 order instructing Plaintiffs not to interfere with Defendant's "informal document production requests . . . for the production of all documents" relating to the design and implementation of certain components of the BodySense ASIC. (*See* Defendant's Response to Plaintiffs' Objections at 8-9 (quoting 6/24/2013 Order at 1).) Since this language precisely mimics the language in defense counsel's initial December 4, 2012 e-mail request to ZMD, (*see* Dkt. No. 424-2, Schmid Decl., Ex. 1, Schmid 12/4/2012 e-mail), and since ZMD produced one document — a BodySense ASIC specification dated May 9, 2006 — in response to this request, the Court fails to see how anything in the Magistrate Judge's order (or elsewhere in the record) suggests that absent Plaintiffs' purported interference, ZMD could be expected to produce something beyond this single document when presented with Defendant's same request for a second time. Similarly, although Defendant speculates that it might learn of additional relevant ZMD documents if it is given the opportunity to depose Dr. Getzlaff, this bare conjecture hardly demonstrates that Defendant has failed to receive any documents it has actually sought from ZMD to date.

Having thus abandoned its initial effort to speak with Dr. Getzlaff on the telephone, Defendant must point to evidence that Plaintiffs somehow interfered with an attempt to depose Dr. Getzlaff. Yet, as Plaintiffs observe, the record is bereft of any evidence that Defendant ever sought ZMD's permission to take Dr. Getzlaff's deposition. Instead, ZMD was asked only whether it would permit an *ex parte* conversation between defense counsel and Dr. Getzlaff, with defense counsel stating that he wished to discuss with Dr. Getzlaff, among other things, whether he would be willing to be deposed at a later date. Because Defendant never sought ZMD's permission to take Dr. Getzlaff's deposition, it follows that Plaintiffs could not have interfered with any such request.

**C.      Defendant Has Failed to Identify Any Legal Basis for Concluding That Plaintiffs "Improperly" Interfered with Its Efforts to Obtain Information from ZMD, Such That the Relief Ordered by the Magistrate Judge Would Be Warranted.**

Next, even assuming that the record supported the conclusion that Plaintiffs interfered with Defendant's efforts to obtain information from ZMD or to depose a ZMD employee concerning the company's involvement in the development of Plaintiffs' BodySense product, Defendant would still be obliged to identify some legal basis upon which the Court could enjoin Plaintiffs from any further interference with these efforts. In an attempt to make this requisite showing, Defendant asserts that Plaintiffs "improperly withheld [their] permission" to ZMD's production of the information sought by Defendant, and that they "actively tried to convince ZMD not to continue to voluntarily cooperate with [Defendant] and to instead require that the discovery requests be made

9

under the Hague Convention." (Defendant's Response to Plaintiffs' Objections at 3-4.) As discussed below, however, the Court agrees with Plaintiffs that these actions, even if supported by evidence, cannot be deemed "improper" interference, at least under any authority identified by Defendant or uncovered in the Court's own research.

First and foremost, Defendant's theory of Plaintiffs' "improper" interference with its discovery efforts overlooks the independent agency and decisionmaking authority exercised by ZMD. When ZMD responded to Defendant's informal discovery requests by insisting that Defendant first obtain Plaintiffs' consent to the requested disclosures,[4] it evidently imposed this condition of its own accord. As stated by ZMD's outside counsel in a March 8, 2013 e-mail to Defendant's counsel, ZMD declined "as a matter of principle" to "disclose internal communications with its customers to third parties," (Dkt. 424-2, Schmid Decl., Ex. 2, Kamp 3/8/2013 e-mail), and Defendant has not produced any evidence casting doubt on this statement of ZMD's usual practice, or otherwise suggesting that Plaintiffs somehow compelled or coerced ZMD into seeking their permission before providing any information requested by Defendant. To the contrary, a review of ZMD's correspondence with Defendant indicates that ZMD itself determined that it was appropriate to seek Plaintiffs' permission before it disclosed information to Defendant concerning its business relationship with Plaintiffs. (*See, e.g.,* Dkt. 424-2,

---

[4] To be accurate, ZMD did not require any such consent before it responded to Defendant's initial request for documents. Rather, ZMD first insisted upon Plaintiffs' consent in response to Defendant's second request for documents — *i.e.,* its request for a copy of the development agreement entered into between Plaintiffs and ZMD — and then reiterated this demand in response to Defendant's request for permission to contact Dr. Getzlaff.

10

Schmid Decl., Ex. 2, Weidauer 1/31/2013 e-mail (explaining that because "the information disclosed hereby is confidential information protected under a non disclosure agreement between ZMD and IEE," ZMD "asked [Plaintiffs] to support that disclosure" and decided to "copy [Plaintiffs] on any further correspondence regarding this matter"); Kamp 3/6/2013 e-mail (stating that "[w]e have contacted [Plaintiffs] in a request for approval of production of the agreement related to the development of the BodySense ASIC").)

Against this backdrop of ZMD's apparent exercise of its independent authority to decide whether and how to respond to Defendant's requests for information, the Court fails to see how Plaintiffs can be deemed to have "improperly interfered" with Defendant's effort to obtain information from ZMD, when the record indicates that it was ZMD that decided to seek Plaintiffs' consent to this production. Because Defendant pursued only informal means of obtaining information from ZMD, proceeding via e-mail to ZMD employees and the company's outside counsel, ZMD presumably was free to grant or deny Defendant's requests on any grounds it chose, or to impose any conditions upon which those requests would be granted.[5] Accordingly, since ZMD could have denied Defendant's requests for any reason — or, indeed, for no reason at all — Defendant fails to explain why this non-party could not condition its compliance upon the

---

[5] Indeed, as recognized by the Magistrate Judge at the June 5, 2013 hearing on Defendant's underlying motion, the Court lacks the power to "order [ZMD] to do anything" in response to Defendant's requests for information, and it is entirely "within [ZMD's] discretion" whether to provide the information sought by Defendant or to make Dr. Getzlaff available for a deposition. (6/5/2013 Hearing Tr. at 75.)

11

consent of its customer. While Defendant seemingly suggests that it was Plaintiffs' "improper interference," as opposed to an ordinary exercise of ZMD's independent business judgment, that led ZMD to impose this condition, nothing in the record supports the notion that ZMD sought Plaintiffs' consent only because Plaintiffs somehow forced it to, or that this requirement of consent was otherwise attributable to some "improper" action taken by Plaintiffs.

Nonetheless, Defendant insists that once ZMD sought this permission, Plaintiffs acted improperly by withholding their consent without identifying any legitimate basis for doing so. The Magistrate Judge invoked this reasoning in granting Defendant's underlying motion, finding that there was no "real substantial merit" to Plaintiffs' refusal to consent to ZMD's disclosure of the information sought by Defendant, and drawing an analogy to a party's obligation under Fed. R. Civ. P. 34(a)(1) to produce documents within that party's "possession, custody, or control." (6/5/2013 Hearing Tr. at 71-72.) Indeed, this Court itself has recognized that under some circumstances, at least, a party can be deemed to have "control" over documents within the meaning of Rule 34(a)(1) if it has the power to consent to a third party's release of those documents. *See Flagg v. City of Detroit,* 252 F.R.D. 346, 353-55 (E.D. Mich. 2008).

Defendant's appeal to this Rule 34 principle, however, is unavailing on a number of grounds. First, the Court has already noted the absence of evidence forging a causal link between Defendant's lack of success in obtaining information from ZMD and Plaintiffs' failure to give their consent to any such disclosure by ZMD. Thus, as a purely

factual matter, it cannot be said that any power of consent enjoyed by Plaintiffs was the lynchpin to Defendant's ability to obtain documents from ZMD or to take Dr. Getzlaff's deposition, such that Plaintiffs could be deemed to have "control" over this information within the meaning of Rule 34.  Moreover, Defendant never actually made any request to Plaintiffs under Rule 34 that could have triggered their obligation to obtain documents that were in ZMD's possession but within Plaintiffs' purported "control."  Finally, even if Defendant had made such a formal discovery request, the Court is unaware of any case law that would stretch the notion of "control" as far as Defendant would here, where a third party in possession of confidential communications with a customer has voluntarily elected to give this customer "veto power" over the disclosure of these materials.  *Cf. Flagg,* 252 F.R.D. at 353-54 (citing the Sixth Circuit's recognition that "documents are deemed to be within the 'control' of a party if it has the legal right to obtain the documents on demand," and surveying a number of other cases that "illustrate[] the variety of circumstances under which a party may be deemed to have 'control' over materials not in its possession" (internal quotation marks and citations omitted)).

Nor does the case law cited by Defendant lend any support to its theory that Plaintiffs "improperly interfered" with its informal third-party discovery efforts by withholding their permission for ZMD to disclose the information sought by Defendant. In each of the three cases cited in Defendant's underlying motion, and again in its response to Plaintiffs' objections, the court denied a motion brought by a party to the litigation to quash a subpoena issued by the opposing party to a non-party.  *See*

*McNaughton-McKay Electric Co. v. Linamar Corp.,* No. 09-11165, 2010 WL 2560047, at *1 (E.D. Mich. June 15, 2010); *Allstate Imaging, Inc. v. First Independence Bank,* No. 08-11363, 2010 WL 1416987, at *1 (E.D. Mich. Apr. 8, 2010); *J.B. Hunt Transport, Inc. v. Adams,* No. 04-70347, 2007 WL 789042, at *1 (E.D. Mich. March 14, 2007). Not surprisingly, the rulings in these cases turned upon ordinary principles governing formal discovery requests served upon non-parties, including (i) a party's lack of standing to challenge a subpoena issued to a non-party, *see McNaughton-Kay Electric Co.,* 2010 WL 2560047, at *2; *J.B. Hunt Transport,* 2007 WL 789042, at *2, (ii) the question whether the third-party subpoena sought relevant information within the meaning of Fed. R. Civ. P. 26(b)(1), *see McNaughton-Kay Electric Co.,* 2010 WL 2560047, at *3; *Allstate Imaging,* 2010 WL 1416987, at *1, and (iii) the question whether the materials sought from the non-party were confidential and, if so, whether the confidentiality of these materials could be adequately ensured through a protective order, *see McNaughton-Kay Electric Co.,* 2010 WL 2560047, at *3; *Allstate Imaging,* 2010 WL 1416987, at *2. Here, by contrast, Defendant has not issued a subpoena or invoked any other sort of formal mechanism for seeking discovery from ZMD, and Plaintiffs, in turn, have not sought judicial relief from any such formal discovery effort. Consequently, the cases cited by Defendant have nothing to say about the present dispute, in which Plaintiffs stand accused of "improperly" interfering with an informal discovery effort by withholding the consent insisted upon by the target of this effort. *Cf. Flagg,* 252 F.R.D. at 366 & n.31 (noting that "there is very little case law that confirms the power of a court to compel a party's

consent to the disclosure of materials pursuant to a third-party subpoena," and observing that the few cases where such consent is ordered "tend to rest upon notions of waiver rather than control over non-party materials").[6]

Finally, Defendant argues that Plaintiffs unduly impeded its effort to obtain information from ZMD by advising this German corporation of its right to insist that Defendant pursue its discovery efforts through the more formal channels available under the Hague Convention. Yet, as Plaintiffs observe, Defendant has failed to "cite[] any authority stating that it is wrongful to apprise a third party of its legal rights." (Plaintiffs' Objections at 14.) Neither has the Court's own research uncovered any case law indicating that Plaintiffs might have acted improperly by reminding ZMD of its right to insist that Defendant proceed under the Hague Convention.[7] Accordingly, the Court once

---

[6]Similarly, the Magistrate Judge's June 24, 2013 order cites case law standing for the proposition that a confidentiality agreement between a party to the litigation and a third party does not preclude the third party's compliance with a subpoena seeking the production of documents protected by the confidentiality agreement. (*See* 6/24/2013 Order at 2-3.) The Magistrate Judge's order further observes that Plaintiffs "essentially waived any right to enforce" their confidentiality agreement with ZMD "by instituting this lawsuit." (*Id.* at 3.) Again, however, while these principles might defeat any attempt by Plaintiffs to challenge a *formal* discovery effort directed at ZMD, the cases referenced in the Magistrate Judge's order — like the cases cited in Defendant's underlying motion — do not address the question whether a party acts improperly by using its powers of consent or persuasion to hinder an *informal* discovery effort.

Indeed, it should not be surprising that when a party elects to proceed informally, the rules and corresponding case law governing formal discovery efforts no longer have much to say about how to resolve any disputes that may arise. Rather, parties that pursue informal discovery are left largely to their own devices, and must rely on cooperation rather than judicial intervention if these efforts are to succeed.

[7]Indeed, as Plaintiffs observe, Defendant is in an especially poor position to complain that its effort to obtain information from ZMD would be impeded through this non-party's

again finds that there is no legal ground for concluding that Plaintiffs "improperly interfered" with Defendant's attempts to obtain information from ZMD, such that the relief awarded in the Magistrate Judge's June 24, 2013 order might be warranted.

Before leaving this matter, the Court wishes to emphasize that nothing in the present ruling should be construed as an expression of the Court's approval of the tactics employed by Plaintiffs in response to Defendant's informal requests for information from ZMD. Throughout this litigation, the parties have all too frequently opted for confrontation over cooperation, resulting in a seemingly endless series of discovery motions and necessitating the Magistrate Judge's near-constant supervision over the parties' discovery efforts. The present matter is simply another skirmish in the larger conflict that has characterized the parties' approach to the discovery process, and against this backdrop, the Court readily sympathizes with and wholeheartedly shares the Magistrate Judge's view that Plaintiffs have failed to suggest any good reason for withholding their consent to ZMD's production of the information sought by Defendant. Nonetheless, the limited question before this Court is whether Defendant has marshaled the requisite factual and legal support for the relief sought in its underlying motion, and the Court concludes, quite simply, that this support is lacking.

---

insistence that Defendant proceed under the Hague Convention, where Defendant itself insisted that Plaintiffs proceed under the Hague Convention in serving the complaint, resulting in a considerable delay before Defendant could be brought into this action.

### III. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' July 8, 2013 objections to the Magistrate Judge's June 24, 2013 order (docket #471) are SUSTAINED. In light of this ruling, the Magistrate Judge's June 24, 2013 order is SET ASIDE, and Defendant's underlying motion to compel Plaintiffs to cease their interference with discovery sought from a third party (docket #423) is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: December 8, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 8, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135