**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

I.E.E. INTERNATIONAL ELECTRONICS &
ENGINEERING, S.A. and IEE SENSING, INC.,

                                                                    Case No. 10-13487

      Plaintiffs/Counter-Defendants,         Hon. Gerald E. Rosen

v.

TK HOLDINGS INC. and TAKATA A.G.,

      Defendants/Counter-Plaintiffs.

_____/

**OPINION AND ORDER GRANTING IN PART
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

                    At a session of said Court, held in
               the U.S. Courthouse, Detroit, Michigan
               on            July 27, 2015

              PRESENT:  Honorable Gerald E. Rosen
                               Chief Judge, United States District Court

**I.  INTRODUCTION**

At the conclusion of a January 5, 2015 settlement conference conducted by the Court, the parties reached a settlement encompassing this and a related action, *I.E.E. International Electronics & Engineering, S.A. v. TK Holdings Inc.,* Case No. 13-15190, and placed this settlement on the record.  The parties then sought to reduce the terms of their agreement to writing, but this effort has reached an impasse.  Accordingly, by motion filed on February 17, 2015, Plaintiffs ask the Court to enforce a written settlement agreement that, in their view, embodies the terms of the parties' settlement as reflected in

the statements of the parties and their counsel at the January 5, 2015 settlement hearing.

As discussed below, the parties' impasse in their effort to reduce their settlement agreement to writing turns upon two points of disagreement. First, Plaintiffs take issue with Defendants' proposal to include a provision in the parties' written settlement agreement calling for Defendants to withhold a portion of their $1.1 million settlement payment in accordance with the purported dictates of German tax law. Next, Plaintiffs object to Defendants' effort to define the "affiliates" encompassed by the cross-licensing portion of the parties' settlement to include both present and future affiliates of the settling parties. Through their present motion, Plaintiffs invite the Court to break this impasse by enforcing a settlement agreement that lacks the provisions put forward by Defendants concerning tax withholding and the licensing rights of future affiliates. In response, Defendants insist that the provisions they have proposed are consistent with the intent of the parties as expressed at the time of the January 5, 2015 settlement conference.

Since Plaintiffs filed their present motion on February 17, 2015, the Court has convened two status conferences to address this motion, and has urged the parties to cooperatively resolve their differences as to the terms of their settlement. Unfortunately, the parties recently notified the Court that they remain at an impasse.[1] Thus, it has been

---

[1]Most notably (and disappointingly), while the Court suggested at an April 1, 2015 status conference that the parties and their tax professionals should, at a minimum, seek to reach common ground as to the obligations Defendants face under German tax law when making their $1.1 million settlement payment and the opportunity for Plaintiffs to obtain reimbursement of at least a portion of any such required tax withholding, the Court was dismayed to learn at a subsequent June 1, 2015 status conference that the parties had made no such effort to identify and discuss — much less narrow the scope of — their differences as to this seemingly discrete

left to the Court to ascertain the terms of the parties' settlement as to the two above-cited points of dispute, and the Court now turns to this task.

## II. ANALYSIS

Before addressing the parties' two specific points of disagreement as to the terms of their settlement, the Court first emphasizes what is *not* at issue in the present motion. In particular, the parties do not dispute that they reached an enforceable agreement at the January 5, 2015 settlement conference to resolve all of their claims in this suit and a related action, Case No. 13-15190. Rather, the disagreement between Plaintiffs and Defendants is more limited: they differ only as to how certain terms of their acknowledged settlement should be memorialized in a written agreement. Importantly, neither side contends that this disagreement is indicative of a broader failure to achieve a meeting of the minds as to all material terms of a settlement, and neither side suggests that the Court's resolution of this dispute will somehow unravel the settlement reached by the parties. Accordingly, with this understanding of what is and is not at issue, the Court considers each of the two points of disagreement raised in Plaintiffs' motion.

First, Plaintiffs take issue with Defendants' stated intention to withhold a portion of their $1.1 million settlement payment in order to comply with an obligation purportedly imposed on the paying Defendant, Takata A.G., under German tax law.[2] As

---

and resolvable issue of German tax law.

[2]At the January 5, 2015 settlement hearing, defense counsel represented that the settlement payment would be made either by Defendant Takata A.G., a German corporation, or by its parent Takata Corporation, a Japanese entity. (*See* 1/5/2015 Settlement Hearing Tr. at 7.)

Plaintiffs observe, Defendants' counsel stated at the January 5, 2015 settlement hearing that "Takata will pay I.E.E. 1.1 million United States [d]ollars," (1/5/2015 Settlement Hearing Tr. at 7), without in any way indicating that any taxes would be withheld from this payment.  Defendants do not dispute this point, but they state that their tax advisors informed them after the January 5 hearing that the contemplated payment from a German corporation (Defendant Takata A.G.) to an entity in Luxembourg (Plaintiff I.E.E. International Electronics & Engineering, S.A.) was subject to tax withholding under German law.  (*See* Defendants' 2/23/2015 Response, Ex. 1, Groombridge Decl. at ¶¶ 8-9.) In Defendants' view, they have "no choice but to comply" with this obligation imposed on them by German law, (Defendants' 2/23/2015 Response at 14), regardless of the parties' failure to anticipate or address this legal obligation when they placed their settlement on the record.

The Court agrees with Defendants that the parties' silence on this issue when stating the terms of their settlement at the January 5, 2015 hearing cannot be construed as evidencing their tacit agreement that Defendants would *both* (i) pay the full $1.1 million settlement amount to Plaintiffs *and* (ii) shoulder the entire burden of the tax withholding obligation imposed by German law.  Surely, it cannot be said that the parties' failure to address the subject of tax withholding at the January 5 hearing reflected some sort of shared understanding or meeting of the minds as to how this matter should be handled. Rather, this silence was almost certainly attributable to the parties' uniform failure to anticipate the possibility that Defendants' settlement payment might be subject to

4

withholding. *See McClusky v. Century Bank, FSB,* No. 14-3419, 598 F. App'x 383, 388 (6th Cir. Jan. 26, 2015) (finding it "significant" that the parties in that case had failed to make any reference to tax treatment and reporting issues in their settlement agreement, where "it is common practice for parties to address these matters in settlement agreements when the parties have, in fact, agreed upon them"). Against this backdrop of mutual unawareness that Defendants' payment would trigger a tax withholding obligation under German law, the Court must determine how this unanticipated obligation should be reflected in the parties' settlement agreement.

For two reasons, the Court finds that the parties' settlement agreement should be construed as requiring Defendants to withhold a portion of their $1.1 million payment in accordance with German tax law. First, it is a settled principle of contract interpretation that the terms of an agreement should be presumed to comply with applicable law. *See Walsh v. Schlecht,* 429 U.S. 401, 408, 97 S. Ct. 679, 685 (1977) (observing that "a general rule of construction presumes the legality and enforceability of contracts"); *see also* Restatement (Second) of Contracts § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). In this case, Defendants state without contradiction that they are compelled under German tax law to withhold taxes from their $1.1 million settlement payment to Plaintiffs.[3] Consequently, if the

---

[3]The Court emphasizes that it takes no position as to the accuracy of Defendants' characterization of German tax law, and that it has made no effort to confirm the correctness of

5

parties' settlement agreement is to comport with German law, Defendants' payment obligation must incorporate the tax withholding duty imposed by this applicable law.

Next, in a number of cases addressing analogous circumstances, the courts have found that a settlement agreement's silence with regard to tax consequences leaves the paying party free to withhold taxes from its settlement payment in accordance with applicable law. In *International Union, United Automobile Aerospace & Agricultural Workers v. Hydro Automotive Structures North America, Inc.,* No. 1:11-CV-28, 2015 WL 630457, at *2 (W.D. Mich. Feb. 12, 2015), for example, the parties to a class action reached a settlement agreement that "provide[d] for payments to individual class members in specified amounts," but did not address the tax consequences of these settlement payments. The settling defendants argued that they were bound by federal tax law to withhold taxes from their payments to the class members, while the plaintiffs contended that the defendants should be required to "gross up" these payments "to ensure that the cash-in-hand for each class member equals the stated amount of the settlement payments recited in" the parties' settlement agreement. *Hydro Automotive,* 2015 WL 630457, at *2.

The court sided with the defendants in this dispute, finding that the silence in the parties' settlement agreement with respect to tax consequences did not "prohibit the

---

Defendants' assertion that they are obligated under German law to withhold taxes from their settlement payment to Plaintiffs. Rather, because Plaintiffs have failed to refute Defendants' statement of their withholding obligation under German tax law, despite ample opportunity to do so, the Court accepts this statement as true for purposes of resolving the present motion.

Defendants from following federal law by deducting from any settlement payment the [federal taxes] Defendants believe are due, and from paying those withheld amounts to the appropriate governmental authority on behalf of the various class members receiving cash payments." *Id.* at *4. In so ruling, the court reasoned that "[i]f the parties had meant to guarantee a particular amount of cash-in-hand [to each class member], they would have had to say so expressly, especially in a tax situation like this that would require grossing up settlement payments to ensure a cash-in-hand outcome." *Id.* at *3. The court further explained that while the defendants' withholding "may result in less cash on hand for particular class members," it was nonetheless true that "each class member would still be receiving the full value of the settlement" by having his or her applicable taxes withheld by the defendants and turned over to the taxing authority "for that class member's benefit." *Id.* In contrast, if the defendants were compelled to increase their payments to class members in order to offset the amounts withheld from these payments in accordance with federal tax law, the court observed that this "would require the Defendants to pay more than they agreed to pay in settlement, and would allow the class members to receive economic value beyond that promised in the Settlement Agreement." *Id.* (footnote omitted). Finally, the court explained that its ruling comported with the "principle that each side has to bear the tax consequences and other third-party benefits and burdens that go along with implementing the Settlement Agreement." *Id.* at *3 n.3; *see also Powertech Technology Inc. v. Tessera, Inc.,* No. 4:10-00945, 2014 WL 2538973, at *5 (N.D. Cal. June 5, 2014) (viewing the pertinent case law as "establish[ing] that when

7

there is a withholding requirement imposed on one party by a government authority, that party must comply with the requirement as it applies to settlement payments," and that particularly in "agreement[s] between . . . sophisticated parties," silence as to tax withholding leads to a "presumption . . . that taxes are levied on the total settlement amount agreed upon" (footnote with citations omitted)).

Similarly, in *Josifovich v. Secure Computing Corp.,* No. 07-5469, 2009 WL 2390611, at *1 (D.N.J. July 31, 2009), the parties agreed to a settlement of the plaintiff's state-law claims of unpaid commissions and employment discrimination, but their agreement was silent as to "whether the settlement proceeds were subject to the withholding of employment taxes." Of particular relevance here, the plaintiff argued that if the defendant corporation withheld any such taxes from the settlement proceeds, the amount paid by the defendant should be "equitably grossed up" to offset this withholding. *Josifovich,* 2009 WL 2390611, at *6. The court rejected this contention, holding that it would not "alter the terms of [the parties'] voluntary settlement agreement and require Defendant to pay more simply because Plaintiff now, after the close of negotiations, is dissatisfied with the anticipated tax consequences of her agreement." *Id.* The court further explained that "for Plaintiff to receive an additional settlement, in excess of that agreed upon by the parties, when the negotiation was with full awareness of the fact that there would be tax consequences, would constitute a windfall to Plaintiff." *Id.* at *7.

Returning to the present matter, the Court is persuaded by the reasoning of the above-cited decisions, and concludes in accordance with this case law that Defendants

may comply with the withholding requirements of German tax law without "grossing up" their payment to Plaintiffs to account for and offset this tax withholding. As the courts have recognized, the withholding of taxes is a natural and wholly foreseeable consequence of a payment made by one party to another pursuant to a settlement agreement, *see McClusky,* 598 F. App'x at 388, and the parties here were free to allocate this withholding burden among themselves as they negotiated their settlement. Having failed to address this issue, the parties are subject to the presumption that "each side has to bear the tax consequences" attendant to the performance of their obligations under the settlement agreement. *Hydro Automotive,* 2015 WL 630457, at *3 n.3. Although Plaintiffs suggest that Defendants should simply pay the entire $1.1 million settlement amount and leave it to Plaintiffs to fulfill any obligations imposed by the pertinent taxing authorities, (*see* Plaintiffs' 2/17/2015 Motion, Br. in Support at 3), Defendants state without contradiction that this proposed course of action would not comport with German law, and that they have no choice but to withhold taxes from their settlement payment. Thus, if Defendants were required to pay the full $1.1 million settlement amount to Plaintiffs and ***also*** make the payment demanded by the German taxing authorities, this would result in payments by Defendants in excess of the $1.1 million figure they agreed to in the parties' settlement. Moreover, Plaintiffs would obtain ***both*** the full value of Defendants $1.1 million settlement payment ***and*** the economic benefit derived from Defendants' satisfaction of the tax obligation owed by the parties to the German taxing

9

authorities as a result of their agreed-upon settlement transaction.[4]

As observed in above-cited cases, silence in a settlement agreement as to the tax consequences of payments surely does not warrant such a reapportionment of the parties' benefits and burdens under their agreement. Rather, if Plaintiffs wished to ensure that they would receive a full $1.1 million settlement payment without regard to any tax consequences of the parties' agreed-upon transaction, they should have negotiated for such a term in the parties' settlement agreement. Because they did not, the Court declines to alter the terms of a settlement reached in hard-fought, arms-length negotiations among sophisticated parties, each of which was represented by highly skilled counsel and had ample opportunity to consider the tax consequences of the opposing party's settlement proposals. By resort to the principles articulated in the pertinent case law, the Court construes the parties' settlement here as calling for Defendants to withhold taxes from their $1.1 million payment to Plaintiffs in accordance with German tax law, without any obligation for Defendants to "gross up" this payment to ensure that Plaintiffs receive the full $1.1 million settlement amount.[5]

---

[4]The Court does not profess to know how the German tax system operates, but presumes that some or all of the amount withheld by Defendants and paid to the German tax authorities would be credited toward an obligation that Plaintiffs otherwise would owe under German tax law as the recipient of a settlement payment made by the German defendant, Takata A.G.

[5]In their response to Plaintiffs' present motion, Defendants state that the parties will likely be able to achieve a reduction in the tax withholding rate mandated under German law by "cooperat[ing] in seeking the benefit of a tax treaty between Germany and Luxembourg." (Defendants' 2/23/2015 Response at 8.) While the Court again expresses no view as to what sorts of reductions or refunds might be available under the applicable tax laws and treaties, it strongly urges the parties to fully cooperate with each other in pursuing any such available tax

The remaining point of dispute among the parties as to the terms of their settlement agreement concerns the scope of the cross-licensing arrangement set forth in this agreement. At the January 5, 2015 settlement hearing, defense counsel stated that the parties' agreement called for each side to grant the other a "worldwide [non-]exclusive paid up license" to certain specified families of patents, and that "[t]here will be no right to sub-license except to affiliates" of the parties. (1/5/2015 Settlement Hearing Tr. at 6-7.) In Plaintiffs' view, this language dictates that only *existing* affiliates of the parties should be eligible to participate in the licensing arrangement granted under the parties' settlement, while Defendants argue that the statements made at January 5 hearing disclose the shared intent of the parties to include *future* affiliates in this licensing arrangement.

The Court finds that Plaintiffs have the better of the argument on this point. While Defendants suggest that the parties could have expressly specified that their licensing arrangement was limited to "existing" or "present" affiliates if that was their true intention, the Court fails to see why an unadorned reference to "affiliates" should be understood as referring to anything other than the parties' existing affiliates. Indeed, as Defendants themselves recognize, if the reference to "affiliates" at the January 5 settlement hearing is construed as encompassing both present *and* future affiliates, it is necessary to incorporate a "change of control" provision into the parties' agreement, in order to prevent a current competitor of one or both parties from securing license rights

---

relief, and it views such cooperation as an implicit obligation owed by the parties under their settlement agreement.

under the settlement agreement by becoming affiliated with one of the parties at some future date. (*See* Defendants' 2/23/2015 Response at 11 (explaining why such a "change of control" provision is necessary under Defendants' reading of the parties' settlement as encompassing both present and future affiliates).) This need to inject still another provision into the parties' settlement agreement — a term that was nowhere mentioned, or even alluded to, at the January 5 settlement hearing — in order to avoid the unintended consequences of Defendants' preferred understanding of the parties' settlement is a strong indication that this understanding is incorrect.

  Defendants next contend that the extension of the parties' cross-licensing arrangement to future affiliates is inherent in the "forward-looking" nature of this arrangement. (*See* Defendants' 2/23/2015 Response at 9 (quoting 1/5/2015 Settlement Hearing Tr. at 7).) Yet, the reference at the January 5 settlement hearing to a "forward-looking" licensing arrangement was meant only to contrast this arrangement with the "backward-looking" release of the infringement claims asserted by the parties in this litigation. (*See* 1/5/2015 Settlement Hearing Tr. at 7.) A licensing arrangement offered as part of the settlement of patent litigation will almost invariably be "forward-looking" in this sense, but Defendants suggest no reason why the scope of such an arrangement should ordinarily be understood, unless the parties expressly say otherwise, as encompassing altogether separate entities that become affiliated with a party at some point in the indefinite future. Nor have Defendants pointed to any sort of industry standard, course of dealings, or conventional usage in the drafting of technology or patent

licensing agreements that would support their preferred construction of the parties' licensing arrangement as extending to future affiliates. Absent any such basis for adopting Defendants' proposed reading of the settlement terms placed on the record at the January 5 hearing, the Court concludes that the reference to "affiliates" at the hearing was meant to include only those entities that fit this description at the time of the hearing — namely, the parties' existing affiliates.[6]

### III.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' February 17, 2015 motion to enforce settlement agreement (docket #526) is GRANTED IN PART, in accordance with the rulings in this opinion and order.  IT IS FURTHER ORDERED that within *fourteen (14) days* of the date of this opinion and order, the parties shall finalize and execute a settlement agreement that comports with the terms set forth at the January 5, 2015 settlement hearing and the Court's rulings in the present opinion and order.  Upon the execution of this settlement agreement, the parties shall promptly submit appropriate stipulated proposed orders to the Court providing for the dismissal of the above-captioned suit and Case No. 13-15190.

s/Gerald E. Rosen
Chief Judge, United States District Court

---

[6] In light of this conclusion, the "change of control" provision proposed by Defendants is unnecessary to the parties' settlement agreement.

Dated:  July 27, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 27, 2015, by electronic and/or ordinary mail.

                                  s/Julie Owens
                                  Case Manager, (313) 234-5135